IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AUTO-OWNERS INSURANCE COMPANY,<br><br>     Plaintiff,<br><br>v.<br><br>JESSE CLAYTON and ALEXANDER DE HAYDU,<br><br>     Defendants. | MEMORANDUM DECISION AND ORDER: FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING A BENCH TRIAL<br><br>Case No. 2:21-cv-00092-JNP-DBP<br><br>District Judge Jill N. Parrish |

Auto-Owners Insurance Company sued Jesse Clayton and Alexander De Haydu, seeking a declaration from the court that its insurance policy did not cover damages to De Haydu caused by an automobile accident with Clayton. The court held a bench trial on this claim. Having considered all of the evidence and argument presented by the parties, the court finds in favor of Auto-Owners and declares that the insurance policy does not cover the accident and that Auto-Owners has no duty to defend Clayton in the action brought against him by De Haydu.

## FINDINGS OF FACT

Based on the evidence presented during the bench trial, the court makes the following findings of fact.

### A.   *Background Facts*

Mr. and Mrs. Cook purchased liability insurance from Auto-Owners for their Chevy Tahoe. Under the terms of the insurance policy, Auto-Owners agreed to cover damages caused by an

automobile accident involving the Tahoe while driven by Mr. Cook, a relative of Mr. Cook, or anyone permitted to use the vehicle by Mr. Cook or one of his relatives.

The Cooks' daughter lived in their home. She was dating Clayton when his parents kicked him out of their house. The Cooks did not want Clayton to stay in their house but agreed that he could sleep in a camper parked on their property when he did not have anywhere else to stay. Sometime around early August 2016, Clayton began using the camper as a place to sleep. He slept in the camper about half the time and in other locations the other half.

On September 1, 2016, Mr. and Mrs. Cook left town to attend a family reunion in Wyoming. In the late morning of September 2, the Cooks' daughter left the house to go to work. The Cooks typically do not lock their door, even when no one is home. Sometime after the daughter left the house, Clayton entered the home and retrieved a key to the Tahoe, which was hanging from a hook near the front door. Clayton then took the Tahoe to pick up his paycheck. While Clayton was driving the Tahoe, he rear-ended De Haydu, injuring him.

The Cooks' daughter returned home after work and noticed that the Tahoe and Clayton were both gone. She called Clayton's cell phone, but he did not answer. Clayton called back and told the daughter that he had taken the Tahoe and gotten into an accident. When Clayton returned to the Cook residence, the daughter called Mr. and Mrs. Cook and told them about accident.

Soon after Mr. and Mrs. Cook returned from their trip to Wyoming, Mr. Cook noticed that some of his tools were missing from the garage and asked Clayton about them. Clayton told Mr. Cook that he had borrowed the tools and that they were locked up at the construction site where he was working. Mr. Cook became suspicious and told Clayton to return the tools the following day. Clayton did not return the tools because he had lied about borrowing them for work. He had stolen the tools and pawned them for money. The Cooks also discovered that Clayton had stolen a

bicycle from the garage and several guns stored in the house and had pawned these items as well. When the Cooks learned that Clayton had been stealing from them, they kicked him out of the camper. Clayton was later convicted on felony theft charges for stealing from the Cooks. The court ordered Clayton to pay about $2,600 in restitution to the Cooks, but he has only paid approximately $45 of this amount.

        B.     *Conflicting Testimony Regarding Permission to Use the Tahoe*

De Haydu sued Clayton in state court for damages caused by the automobile accident. Auto-Owners subsequently filed this action against both Clayton and De Haydu, seeking a declaration from the court that the automobile accident was not covered under its insurance policy because Clayton did not have permission to use the Cooks' vehicle.

De Haydu deposed Clayton in the state-court action. Counsel for De Haydu, Clayton, and Auto-Owners were present for the deposition. Counsel for De Haydu examined Clayton first. During direct examination, Clayton testified that on the date of the accident, he asked Mr. Cook if he could borrow the Tahoe to pick up his paycheck. Clayton also testified that he had driven the Tahoe approximately three times before the accident and that he had borrowed the vehicle around once or twice a month while he lived in the Cooks' camper.

Counsel for Auto-Owners then cross-examined Clayton. The cross-examination focused on undermining Clayton's credibility. During the cross-examination, counsel for Auto-Owners asked Clayton for his current supervisor's contact information. Clayton asked why Auto-Owners wanted this information and then requested to take a break from the deposition. When the parties reconvened, Clayton stated that he did not wish to continue the deposition because he wanted to get his own lawyer. Clayton then terminated the deposition. Counsel for Auto-Owners noted for the record his objection to the use of the deposition in any proceeding because he had not been

able to finish his cross-examination. Auto-Owners served several notices of deposition on Clayton to complete its examination. But Clayton never appeared. Indeed, Auto-Owners and De Haydu were unable to locate or contact Clayton.

In this action, the court entered a default against Clayton because he did not answer Auto-Owners' complaint. The court subsequently scheduled a bench trial on Auto-Owner's declaratory relief claim against De Haydu. Mr. Cook, Mrs. Cook, and their daughter testified during the bench trial. Mr. Cook testified that Clayton never contacted him to ask for permission to use the Tahoe on the date of the accident. He stated that that he had never given Clayton permission to drive the vehicle and that, to his knowledge, Clayton had never used the Tahoe prior to the date of the accident. Mrs. Cook and her daughter also testified that they had never authorized Clayton to drive the Tahoe and that they had no knowledge of Clayton borrowing the vehicle prior to the accident. The Cooks' daughter testified that when Clayton called to tell her about the accident, she asked him why he had taken the Tahoe. She said that Clayton responded that it was easier to ask for forgiveness than for permission.

## ANALYSIS

De Haydu urges the court to find that his accident with Clayton is covered by the Auto-Owners insurance policy because Clayton had permission to use the Tahoe on the date of the accident. Under the insurance policy, the accident is covered if Mr. Cook, Mrs. Cook, or their daughter gave Clayton permission to use the Tahoe. Permission to use a vehicle may be either express or implied. *See* UTAH CODE § 31A-22-303(1)(a)(ii)(A); *United Servs. Auto. Ass'n v. Preferred Acc. Ins. Co. of N. Y.*, 190 F.2d 404, 406 (10th Cir. 1951). De Haydu argues that Clayton had both express and implied permission to use the Tahoe.

4

## I.    EXPRESS PERMISSION

De Haydu first contends that Clayton had express permission to use the Tahoe. De Haydu points to Clayton's assertion in his deposition that he contacted Mr. Cook prior to the accident and asked for permission to use the Tahoe to pick up his paycheck. Clayton did not explicitly say that Mr. Cook granted him permission to use the vehicle, but his testimony implies that Mr. Cook authorized him to use the Tahoe.

At the bench trial, Mr. Cook firmly denied that Clayton called him and asked to use the Tahoe. Mrs. Cook, who was with Mr. Cook throughout the day of the accident, also testified that she did not observe her husband receiving any calls from Clayton. Finally, The Cooks' daughter testified that when she asked Clayton why he had taken the Tahoe, he responded that it was easier to ask for forgiveness than for permission.

The court finds that Clayton did not seek or receive express permission to use the Tahoe on the date of the accident. The court, having observed the demeanor of the witnesses at the bench trial, determines that Mr. and Mrs. Cook and their daughter provided credible testimony contradicting Clayton's claims in his deposition. The court further finds that Clayton's deposition testimony that he received permission to drive the Tahoe is not credible. Clayton had a motive to lie in his deposition. He would only be protected from personal liability for the accident by the Auto-Owners policy if he had received permission to drive the Tahoe. Moreover, Clayton had a propensity for dishonesty, as evidenced by his felony theft conviction for stealing from the Cooks while he stayed in their camper. If he was willing to steal from the Cooks, he was certainly capable of borrowing a vehicle without permission if he believed that no one would find out about it. Finally, the court concludes that the circumstances of the deposition detract from the reliability of Clayton's testimony. Clayton ended the deposition before counsel for Auto-Owners could finish

cross-examining him. He also avoided all further attempts to finish the deposition or to testify before the court. Given that Clayton avoided all efforts to fully test the credibility of his testimony, the court affords little weight to statements made in his deposition.

## II.   IMPLIED PERMISSION

De Haydu also argues that Clayton had implied consent to use the Tahoe.

> The necessary permission [to use a vehicle] may be in the form of implied affirmative consent. It may result by implication from the relationship of the parties and their course of conduct in which they mutually acquiesced. And it may arise from a course of conduct pursued with knowledge of the facts for such time and in such manner as to signify clearly and convincingly an understanding consent which amounts in law to a grant of the privilege involved.

*United Servs. Auto. Ass'n v. Preferred Acc. Ins. Co. of N. Y.*, 190 F.2d 404, 406 (10th Cir. 1951). "The question of implied permission is . . . one of fact." *Curtis v. State Farm Mut. Auto. Ins. Co.*, 591 F.2d 572, 575 (10th Cir. 1979).

De Haydu contends that Clayton had implied permission to use the Tahoe based on his testimony that he had borrowed the Tahoe on several occasions before the date of the accident. But Mr. Cook, Mrs. Cook, and their daughter all testified that Clayton never borrowed the Tahoe with their knowledge or permission. For the same reasons stated above, the court finds this testimony to be credible and disbelieves Clayton's testimony to the contrary. Because the court finds that Clayton never received permission to use the Tahoe prior to the accident, there is no course of conduct that could support De Haydu's implied permission theory.

De Haydu also points to Mr. Cook's testimony that on several occasions he had given Clayton permission to use his motorcycle to take his daughter for a ride. De Haydu argues that Mr. Cook's express grant of permission to use the motorcycle constituted implicit authorization to use the Tahoe. The court disagrees. By granting Clayton permission to use the motorcycle on specific

occasions and for a specific purpose, Mr. Cook did not impliedly permit Clayton to use any of his vehicles for any purpose without asking first.

Finally, Clayton's testimony that he asked for and received express permission to use the Tahoe on the date of the accident further reinforces the court's finding that he did not have implied permission to use the vehicle. Although the court finds that Clayton's testimony on this point was not truthful, the fact that Clayton believed that he needed to lie about receiving express permission to use the Tahoe reveals his belief that he did not have implied permission to drive the vehicle without asking first.

## CONCLUSION

The court finds that Clayton did not have express or implied permission to use the Tahoe on the date of the accident. Accordingly, the insurance policy for the vehicle issued by Auto-Owners does not cover De Haydu's damages caused by the accident. The court, therefore, finds in favor of Auto-Owners on its claim for declaratory relief.

Accordingly, the court hereby declares that:

1. There is no coverage under the Auto-Owners insurance policy for any claims for damages asserted by De Haydu against Clayton in the state-court action.

2. Auto-Owners has no duty to defend Clayton in the action filed by De Haydu.

DATED May 30, 2023.

BY THE COURT

Jill N. Parrish
United States District Court Judge

7